UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHN HERBERT LEE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-287-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits. Because her decision is supported by substantial evidence and is based on a proper application of the law, the Commissioner's decision will be affirmed.

I.

Plaintiff John Herbert Lee ("plaintiff" or "Lee") filed an application for disability insurance benefits ("DIB") on October 21, 2016. [*See* Administrative Transcript; hereafter "Tr.," 217.] His application was disapproved initially and upon reconsideration. [Tr. 134, 139] Lee thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Joyce Francis held a hearing on November 9, 2017, and issued a written decision denying benefits on March 21, 2018. [Tr. 76-99; 51-68] The ruling became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review on October 10, 2018. [Tr. 1-6] Accordingly, this matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.

The plaintiff was 48 years old at the time of the ALJ's decision. He attended school through the eighth grade and attended special education classes. [Tr. 79] Thereafter, Lee performed skilled and semi-skilled work in the coal industry for more than 20 years, most recently hauling supplies in and out of mines. [Tr. 82, 92-93] He alleges that he became unable to work when he injured his right shoulder on July 9, 2015. [Tr. 81-82, 219] Because of this injury. Lee received workers' compensation benefits from July 29, 2015, through September 20, 2016. [Tr. 214-16] At the time of the administrative hearing, he lived alone, held a driver's license, and was able to drive himself for shopping two or three times per week. [Tr. 80]

Lee advised the ALJ that pain in his shoulder, neck, and low back prevented him from working. [Tr. 84] He estimated that he could sit, stand, or walk for about ten minutes without changing positions, and could lift or carry about ten pounds. [Tr. 85] Lee was able to shower and dress himself, and prepare simple meals, but denied being able to do any housework. [Tr. 85] For social activities, he reported attending church once per week. [Tr. 86]

Ben Kibler, M.D., treated Lee's shoulder injury beginning in October 2015. [Tr. 606] Lee underwent an MRI, which revealed a small supraspinatus tear. Dr. Kibler recommended physical therapy, but Lee did not improve significantly with conservative treatment. As a result, Kibler surgically repaired the supraspinatus on February 3, 2016. [Tr. 602] Lee remained off work and followed up with Kibler periodically until he attained maximum medical improvement in September 2016. [Tr. 589] While Lee complained of neck tightness and stiffness, Dr. Kibler concluded that he had no "true radicular symptoms." [Tr. 592] Kibler

reported, per Lee's functional capacity evaluation, that he could lift no more than 40 pounds to his waist and no more than 12 to 15 pounds overhead.

Lee saw Chandrashekar Krishnaswamy, M.D., for neck and low back pain in April 2017. [Tr. 724-28] He rated his low back pain as a severity level of nine out of ten and complained that the pain radiated to his hip. While Lee's sensation and deep tendon reflexes were normal, Krishnaswamy suspected lumbar radiculopathy and recommended naproxen, Flexeril, and physical therapy.

Lee returned to Dr. Krishnaswamy with complaints of neck pain in July 2017. [Tr. 719] Krishnaswamy, however, did not detect any spine tenderness, and muscle tone and bulk were normal. Further, Lee's upper extremity strength was rated five-minus out of five, at worst, and his deep tendon reflexes were intact and symmetrical. An MRI of Lee's cervical spine was normal. [Tr. 720] Krishnaswamy prescribed Flexeril and recommended physical therapy.

Lee has a history of alcoholism, depression, and suicidal ideations. He presented to the Harlan ARH emergency department while intoxicated on three occasions between December 2014 and September 2016. Lee was briefly hospitalized each time and was encouraged to follow up with medication and counseling. [Tr. 361-557] Psychiatrist Syed Raza, M.D., treated Lee on an outpatient basis beginning in September 2016 and diagnosed major depressive disorder and alcohol dependency. [Tr. 761] Raza prescribed Vistaril and Paxil and recommended bi-monthly counseling. [Tr. 762] By August 2017, Lee still experienced stress and feelings of uselessness, but he had attended some counseling sessions. Additionally, he was taking his prescribed medication and his depression and anxiety had improved. [Tr. 732,

750] Lee advised the ALJ during his administrative hearing that he had not consumed alcohol in two years. [Tr. 90]

Ravi Jayavarapu, M.D., performed a consultative examination in December 2016. [Tr. 623] Lee advised Jayavarapu that he was most limited by right shoulder and low back pain. Jayavarapu observed that Lee had mild difficulty getting on and off the examination table but exhibited normal posture and gait. [Tr. 624] Lee's right shoulder range of motion was reduced, with flexion limited to 110 degrees and abduction limited to 70 degrees. Lee was unable to extend his lumbar spine past neutral, but could flex to 70 degrees. Jayavarapu noted that Lee's cervical range of motion was within normal limits. [Tr. 627]

Jayavarapu concluded that Lee could perform activities involving sitting, standing, moving about, lifting, carrying, and handling objects with his left hand. He found it was reasonable that Lee would have mild to moderate difficulty sitting or standing for prolonged periods, or lifting, carrying, and handling objects with his right hand. Although Lee had limited motion in his right shoulder, his strength was five out of five in all extremities. [Tr. 626]

Leigh Ford, Ph.D., performed a consultative psychiatric examination on December 19, 2016. [Tr. 630] She noted that Lee was fully oriented and could recall recent and remote events. His affect appeared flat and his mood was pessimistic, as he continued to struggle with feelings of depression. However, Lee exhibited normal speech and denied experiencing hallucinations. While his organization of thought was logical and goal-oriented, he had some gaps in insight and had trouble making decisions. [Tr. 631] Ford administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) and Lee's full-scale IQ was 66—falling within the extremely low range of cognitive abilities.

Ford diagnosed Lee with mild intellectual disability and major depressive order. [Tr. 633] She determined that his ability to understand, remember, and carry out instructions toward the performance of simple repetitive tasks was slightly affected by his impairments. She further concluded that his ability to tolerate stress and the pressure of day-to-day employment was affected with moderate limitations. Ford also felt that Lee's ability to sustain concentration and attention and to respond appropriately to supervision was moderately limited. [Tr. 633]

Brittany Brose, Au.D., performed a hearing analysis on October 25, 2016. [Tr. 613-20] Lee reported long-term noise exposure from working in the coal industry, and felt that his hearing in both ears had gradually diminished. [Tr. 613] Brose conducted an audiometry analysis and concluded that Lee had mild hearing loss bilaterally, which was as-likely-as-not caused by long-term noise exposure. She recommended a trial of binaural, mild-gain hearing aids. [Tr. 616]

H. Thompson Prout, Ph.D., reviewed Lee's file on January 2, 2017, for the purpose of recommending a mental functional capacity assessment. [AR 111-13] He concluded that Lee's ability to understand, remember, and carry out very short and simple instructions was not significantly limited. [Tr. 111] And while Prout thought Lee's ability to maintain attention and concentration for extended periods was moderately limited, his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was not significantly limited. He also concluded that Lee could complete a normal workday and workweek without interruptions from psychologically based symptoms and could perform at a consistent pace without an unreasonable number or length of rest periods. Ilze Sillers,

Ph.D., also reviewed the claimants' file and concurred with Prout's findings on January 19, 2017. [Tr. 124]

Consulting physician Sudhideb Mukherjee, M.D. reviewed Lee's file on January 19, 2017. [Tr. 131-32] He concluded that, while Lee was limited to unskilled work, he could perform light work including that of a getterer, patcher, or acid adjuster. [AR 132]

Based on the foregoing, ALJ Francis determined that Lee had the following severe impairments: anxiety; depression; an intellectual disability; obesity; status post repair of the right scapularis; and degenerative changes of the lumbar spine. [AR 56] After considering the entire record, she determined that Lee had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except he can

> occasionally climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can never reach overhead with the right upper extremity; can occasionally be exposed to vibration; can occasionally be exposed to unprotected heights or dangerous moving machinery. The claimant can understand and remember simple instructions; can sustain attention and concentration to complete simple tasks with regular breaks every two hours; can interact as needed with supervisors, coworkers, and the public; and can adapt to routine work conditions and occasional workplace changes that are gradually introduced.

[Tr. 60] The ALJ concluded that Lee could not perform his past work as a coal miner. However, based on the vocational expert's testimony, he found that there were jobs existing in significant numbers in the national economy that Lee could perform. Accordingly, ALJ Francis determined That Lee was not disabled under the Social Security Act.

### III.

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d

532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(e).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.

**A.     The ALJ did not err in considering Lee's subjective complaints of pain.**

While Lee alleges generally that the ALJ improperly considered his subjective complaints of pain, he does not explain how the ALJ's analysis deviated from what is required under the law. Instead, he recites portions of the record and claims that his "subjective complaints are definitely rooted in objective medical findings." [Record No. 13-1, p. 11] Despite the plaintiff's failure to make a properly developed argument, the Court has reviewed the record and finds that the ALJ applied the required two-step process for evaluating subjective complaints. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (issues raised without some effort at developed argumentation generally are deemed waived).

ALJ Francis first determined that Lee had medically determinable impairments that could reasonably be expected to cause the symptoms he alleged. *See* 20 C.F.R. § 404.1529(b). [Tr. 60] Specifically, she noted that Lee had injured his shoulder in 2015, and that he

complained of neck and back pain which he rated a five or six out of ten. She concluded, however, that his statements concerning the intensity, persistence, and limiting effects were not substantiated by objective medical evidence or the other evidence of record. [Tr. 61] *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Regarding Lee's shoulder, neck, and low back pain, the ALJ noted that his x-rays and MRI were unremarkable. [Tr. 62] Additionally, Dr. Kibler's notes indicate that Lee's right shoulder range of motion was within functional limits and he had "no true radicular symptoms." [Tr. 61] Drs. Jayavarapu and Krishnaswamy each noted that Lee's cervical range of motion and muscle tone were normal. [Tr. 61-62] While Lee did have some loss of right shoulder function following his supraspinatus repair, his strength was good and, by January 2017, he had a negative drop arm test and "no evidence of impingement or rotator cuff pathology." [Tr. 62] Despite Lee's ongoing complaints about his low back, he exhibited no radicular symptoms, and his lower extremity strength, sensation, and reflexes were all normal. [Tr. 62] He was able to drive, go shopping, and do some chores around the house.

The ALJ also evaluated Lee's claims regarding the alleged intensity of his mental impairments. She noted that alcohol consumption preceded each of his inpatient admissions. [Tr. 63] Although Lee did not attend counseling consistently, he was taking his medication in January 2017, and reported that his symptoms of depression and anxiety had improved. [Tr. 64] His complaints worsened somewhat by August 2017, but Dr. Raza noted that he was alert, cooperative, well-groomed, had good insight and judgment, and displayed normal psychomotor activity. [Tr. 65] He denied any hallucinations or suicidal thoughts.

An ALJ's evaluation of pain and other symptoms generally is given great weight. *See Bunch v. Berryhill,* No. 1: 17-CV-00195, 2018 WL 5283451, at *3 (W.D. Ky. Oct. 24, 2018)

(citing *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001). In the present case, Lee has not identified any error in the ALJ's thorough application of the two-step process regarding his complaints of pain and psychological symptoms. Accordingly, he has not shown that there is any basis to disturb the ALJ's ruling on this ground.

> **B.** **The ALJ was not required to explicitly discuss Lee's request for a closed period of disability.**

Lee injured his shoulder on or about July 14, 2015, and has not worked since that date. He had reached maximum medical improvement as of September 29, 2016, according to Dr. Kibler. [Tr. 589] He received temporary disability benefits through workers' compensation from July 29, 2015, through September 29, 2016. [AR 214-16] Lee's attorney asked the ALJ during the administrative hearing to consider a closed period of disability, from July 14, 2015, through October 1, 2016, in the alternative to a full award of DIB. [Tr. 98]

Disability benefits can be awarded for a closed period. *See Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) (while "[t]he [Social Security Act] itself does not provide for a closed period of benefits . . . we think it clear that such a closed period of benefits may be awarded.") A claimant who meets the 12-month durational requirement of 42 U.S.C. § 423(d)(1)(A) may be entitled to benefits from the time his disability commences to the time it ceases. *Widener v. Astrue*, No. 08-107-DLB, 2009 WL 2778215, at *5 (Aug. 27, 2009) (citing *Howse v. Heckler*, 782 F.2d 626 (6th Cir. 1986)).

The Commissioner contends that, while the ALJ did not address the closed period explicitly, she implicitly considered the claim and rejected it. The Commissioner further contends that the evidence of record does not suggest that Lee was unable to perform

substantial gainful employment from July 2015 through October 2016—only that he could not return to his job as a coal miner. [Record No. 15, p. 8]

The Court has considered both parties positions and finds that the Commissioner has the better argument in this instance. The ALJ concluded that Lee had not been unable to engage in substantial gainful activity by reason of a medically determinable impairment for a period of at least 12 continuous months. [Tr. 54] This finding inherently forecloses Lee's request for a closed period of disability.

Additionally, the ALJ explicitly discussed the medical evidence that was available from the relevant period. Lee injured his shoulder in July 2015 and experienced some improvement of his symptoms with conservative treatment. By October 2015, he was still experiencing some pain and clicking, but could raise his arm to shoulder height. [Tr. 606] He underwent shoulder surgery in February 2016, and had reached maximum medical improvement by September of the same year. [Tr. 589, 602] And while Lee experienced some mental health issues during this time period, they were fueled by alcohol consumption. [Tr. 63] Lee attended outpatient counseling in September 2016, and was alert, oriented, attentive, and denied hallucinations or delusions. [Tr. 64] Put simply, the Court has not found, and Lee has not identified, any evidence in the record indicating that he was precluded from all work for any discrete period lasting 12 months or longer.

Although there does not appear to be any binding authority on the issue, other courts within this circuit have concluded that ALJs are not required to make explicit findings regarding a closed period of disability. *See Melika v. SSA*, No. 3: 18-cv-00508, 2019 WL 162386, at *15 (M.D. Tenn. Jan. 10, 2019); *Coggin v. Berryhill*, 2017 WL 39113015, at *5 (M.D. Tenn. Sept. 7, 2017); *Evers v. Astrue*, No. 3:12-CV-118, 2013 WL 1305627, at *12

(E.D. Tenn. Jan. 2, 2013); *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10CV1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012). *But see Widener*, 2009 WL 2778215, at *5 ("[B]ecause the ALJ failed to address whether Plaintiff was entitled to a closed period of disability, the Court concludes that remand is required so that the ALJ may make specific findings regarding whether Plaintiff's multiple surgeries during the three-year period beginning November 2000 rendered her disabled during that discrete period.").

Based on the foregoing, the undersigned concludes that the ALJ's failure to explicitly discuss the closed period was harmless error and therefore does not constitute a basis for remand.

### C. Substantial evidence supports the ALJ's decision.

Lee has failed to develop a reasoned argument regarding his claim that the ALJ's decision is not supported by substantial evidence. Instead, he simply contends that the record as a whole reflects that he cannot perform any type of work. [Record No. 13-1, p. 13] However, the ALJ's thorough analysis clearly identifies "such relevant evidence as a reasonable mind might accept as adequate" to support her conclusion that Lee was not disabled.

The ALJ relied on a report from Dr. Kibler, Lee's treating orthopedic surgeon, who noted that Lee had the permanent restrictions of lifting no more than 40 pounds to the waist and no more than 12 to 15 pounds overhead. [Tr. 61] No medical source indicated that Lee had a significant impairment involving his neck, and his x-ray and MRI were normal. Additionally, no physician opined that Lee had significant impairments with respect to his low back. While he had some lumbar range of motion limitations, his gait, lower extremity strength, and sensation were normal and he did not use an assistive device. [Tr. 61]

The ALJ assigned great weigh to Dr. Ford's opinion regarding Lee's mental impairments. Her conclusion that Lee could carry out simple tasks with moderate limitations is supported by the record as a whole, particularly Dr. Raza's treatment notes indicating that Lee was cooperative, with good insight and judgment. [Tr. 66] The ALJ also incorporated the limitations assessed by consultants Prout and Sillers, considering Lee's limited performance on the WAIS-IV.

The ALJ explained, in detail, the evidence of record she relied upon to fashion each aspect of the RFC. As Lee has not objected to any particular portion of the RFC or to the VE's testimony, he has not raised any legitimate question concerning the validity of the ALJ's decision denying benefits.

V.

Based on the above analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff John Herbert Lee's motion for summary judgment [Record No. 13] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for summary judgment [Record No. 15] is **GRANTED**.

Dated: May 6, 2019.



Signed By: *Danny C. Reeves*
United States District Judge